UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                    Case No. 15-20498

TYRONE HARVEY,                                      HON. AVERN COHN

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS**
**(Doc. 17)**

I. Introduction

This is a criminal case. Defendant Tyrone Harvey is charged in an indictment with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The charges arose after a search warrant was executed at 13300 Kilbourne, Detroit where defendant resides.

Before the Court is defendant's motion to suppress. The motion is fully briefed, see Docs. 17, 19, 22, 23, with supplemental briefs following a hearing, see Docs. 24, 27. The matter is now ready for decision. For the reasons that follow, the motion will be granted.

As will be explained, the affidavit in support of the search warrant is focused on the drug trafficking activities of Christopher Livingston and Lamont Harvey, defendant's brother. Defendant is not mentioned in the affidavit. The affidavit references three residences in Detroit: 13300 Kilbourne, 20400 Gallagher, and 11524 Nashville. It

seeks a search warrant for the Kilbourne and Gallagher residences. The Kilbourne residence is essentially an afterthought; it is mentioned only four times in the affidavit. By contrast, the Gallagher residence is mentioned eight times and the Nashville address, which is not the subject of the search warrant, is mentioned fourteen times. In an attempt to tie the Kilbourne residence into the activities of Livingston and Lamont Harvey, the affidavit includes vague and stale information about prior illegal activity at the Kilbourne residence. Stripped of this misleading information, the affidavit contains no evidence from which to conclude that probable cause exists to search the Kilbourne residence.

## II.  Background

### A.  General

On July 22, 2015, an ATF Special Agent (agent) applied for a search warrant to search two residences: 20400 Gallagher and 13300 Kilbourne. As noted above, the search warrant grew out of an ATF investigation of Christopher Livingston and Lamont Harvey and references three residences:

  11524 Nashville  - Livingston's known residence

  20400 Gallagher - Lamont Harvey's residence

  13300 Kilbourne - a residence where Lamont Harvey had been seen and where other members of Lamont Harvey's family, including defendant, reside

The affidavit is sixteen pages and contains forty-three paragraphs. Because the affidavit provides the sum and substance of the facts the magistrate judge found sufficient to establish probable cause, it is necessary to examine the information in the affidavit in detail.

B.  The Affidavit

Paragraphs one through three of the affidavit recite the agent's experience and a statement that he is, "... conducting an investigation into the violation of federal firearms and narcotics laws by Christopher LIVINGSTON and Lamont HARVEY."  Doc. 17-1,Affidavit, at ¶ 3.[1]

In paragraphs five through eleven, the agent states that ATF-1 and the ATF identified Livingston as a, "... drug dealer, selling crack cocaine ... "  Affidavit at ¶ 5. These paragraphs then identify Livingston and Lamont Harvey and state:

    a)  Livingston has a criminal history of a 1995 State controlled substance felony conviction and a 2003 Federal conviction for Felon in Possession.  Affidavit at ¶ 6;

    b)  Livingston resides at 11524 Nashville, Detroit.  Affidavit at ¶ 5;

    c)  Livingston operates two vehicles and one of those vehicles is co-registered to him.  Affidavit at ¶ 5, 8.

    d)  Both vehicles used and/or co-registered to Livingston are registered to his residence at 11524 Nashville, Detroit.  Affidavit at ¶ 5, 9.

In paragraph seven, the agent states that Lamont Harvey, "... pled guilty to felony controlled substance-Del/Mfg  (Cocaine, Heroin or Another narcotic), on July 10, 2010. That case was charged in Third Circuit Court, Detroit, Michigan."  Affidavit at ¶ 7.  In paragraph eleven, the agent states that Lamont Harvey was observed driving a 2003 white Chevrolet Suburban, Michigan license plate AHU-138, which according to a "law enforcement computer check" is currently registered to the residence at 20400 Gallagher, Detroit.  Affidavit at ¶ 11.

---

[1] Livingston and Lamont Harvey were later indicted for conspiracy to possess with intent to distribute and distribution of cocaine.

Paragraph twelve contains a generalized assertion that an ATF agent and ATF-1, "... purchased illegal narcotics and/or a firearm from LIVINGSTON on fourteen (14) occasions." Affidavit at ¶ l2. However, the affidavit describes five hand-to-hand sales of cocaine and a single handgun from Livingston to an undercover agent on three separate dates, as noted below..

Specifically, paragraphs thirteen through eighteen[2] described two separate sales of suspected cocaine and a single handgun from Livingston to an undercover agent on July 7, 2015. These paragraphs also describe the agent's surveillance of Livingston before and during the two separate drug/gun sales:

> a.) On July 7th, agents observe Livingston leave his residence at 11524 Nashville and travel to 19356 Gallagher, Detroit. At that location agents saw, "... an unknown black male exited the location and met with Livingston on the street. The unknown black male handed an object to Livingston." Affidavit at ¶14.

> b.) The agents further observed Livingston return to his home at 11524 Nashville where a 2003 white Suburban, license plate AHU-138 was parked; "LIVINGSTON had a short meeting with the driver ... then entered the residence...[a]t this juncture, the 2003 White, Suburban, license plate AHU-138 departed." Affidavit at ¶ 14.

> c.) Livingston, accompanied by an unidentified African American female, was then observed to drive directly to the undercover agent and hand him suspected cocaine and one handgun. Affidavit at ¶ 16.

> d.) The undercover agent then solicited Livingston for additional cocaine; surveillance agents followed Livingston back to his home at 11524 Nashville, where he entered his home, then departed his home and drove directly back to the undercover agent and sold his second package of cocaine on July 7th. Affidavit at ¶ 16,17.

Paragraphs twenty through twenty-five detail a single sale of cocaine from

---

[2] Paragraphs 19, 26 and 30 simply state that the suspected cocaine purchased from Livingston field-tested positive and was secured as evidence.

Livingston to an undercover agent on July 8th, 2015. These paragraphs also recount agents' observations of Livingston's activities immediately before and during the sales transaction.

Particularly, paragraph twenty-one states that an agent began surveillance at Livingston's house at 8:45 a.m.; at 11:35 a.m. Livingston arrives at his home, departs and returns about 12:21 p.m. "LIVINGSTON stayed in his vehicle until the white 2003 Chevrolet Suburban with Michigan license plate AHU-138 arrived. LIVINGSTON exited his vehicle and met with the driver of the above Chevrolet Suburban. After a short meeting the Chevrolet Suburban departed the area." Affidavit at ¶ 21. After the Suburban drives away from Livingston's house, agents follow. The Suburban parks on Coplin Street in Detroit.

In paragraph twenty-two, an "unidentified female" was observed coming from the southeast corner of Coplin and Kilbourne she approached the front passenger window and "conversed briefly with HARVEY." After the Suburban drove away the agents, "... conducted an investigative stop..." of the vehicle. The affidavit states that, "the driver was identified as HARVEY. .. HARVEY indicated his residence is 20400 Gallagher, Detroit, Michigan." Further, a check of the registration of the vehicle driven by HARVEY indicated the vehicle is registered to the address of 20400 Gallagher Detroit, Michigan. Affidavit at ¶ 22. This is the first mention of the Kilbourne residence.

Paragraph twenty-three states that on July 8, ATF-1 informed ATF agents that 'he/she' had communication with Livingston, "to make a narcotics purchase." Affidavit at ¶ 23. At approximately 12:25 p.m. Livingston met the undercover agent and sold $550 worth of cocaine to the agent. Affidavit at ¶ 25.

Paragraphs twenty-seven through twenty-nine describe that on July 10 agents obtained a State search warrant from the 36th District Court to place a tracking device on the Suburban which Lamont Harvey is often seen driving. On July 16, the agents successfully attached the tracking device onto the Suburban. Affidavit at ¶ 28.

Paragraph twenty-nine makes two factual assertions: first, that since the tracker was installed on July 16, the Suburban is, "located at 20400 Gallagher throughout the evening hours." Second, the Suburban "travels to and remains at 13300 Kilbourne, Detroit, Michigan on numerous occasions." Affidavit at ¶ 29. This is the second mention of Kilbourne.

Paragraphs thirty through thirty-four describe Lamont Harvey's morning travels in the Suburban on July 21:

    a.) At 8:30 a.m. the Suburban is located at his 20400 Gallagher home; Affidavit at ¶ 30 (where Lamont Harvey stated he resides; Affidavit at ¶ 22,·)

    b.) At 9:38 a.m. the Suburban is parked by the 13300 Kilbourne Detroit house; Affidavit at ¶ 31;

    c.) At 10:10 a.m. Lamont Harvey is seen entering the Suburban and he drives to the DTE Energy office on 8 Mile Road; at 10:15 a.m. Lamont Harvey drives to Livingston's residence at 11524 Nashville and agents watch Livingston approach the Suburban, open the front passenger door and, "...after a few seconds close the door and return to the residence." Affidavit at ¶ 34.

This is the third mention of Kilbourne.

Paragraph thirty-five, states that at 10:30 a.m. Livingston and an unknown female "exit 11524 Nashville and were followed directly to a meeting with the undercover agent where, "an illegal narcotics transaction took place." Affidavit at ¶ 35.

Paragraphs thirty-six through thirty-eight recite the planning efforts the undercover agent and confidential source undertake to meet a second time on July 21

6

and again purchase suspected cocaine from Livingston.

Paragraph thirty-eight describes that Livingston arrives at the prearranged narcotics sale location with, "an African American female seated in the front passenger seat ", operating 'a gray in color SUV Michigan registration was CX-897' and sells $550 worth of suspected cocaine to the undercover agent." Affidavit at ¶ 38.

Paragraphs thirty-five through thirty-nine do not mention Lamont Harvey, the Suburban, or 13300 Kilbourne.

However, paragraph forty attempts to tie Lamont Harvey, his residence at 20400, and 13300 Kilbourne. It reads:

> During this investigation [agent] caused a law enforcement database check (Accurint), relating to the residences located at 20400 Gallagher and 13300 Kilbourne, Detroit, Michigan. These checks indicate both residences contain persons related to and having the last name of HARVEY. In addition, previous law enforcement activity, to include prior narcotics search warrant executions, at both of these locations, indicate the occupants being Lamont Harvey and other members of the HARVEY family. Narcotics and firearms along with large amounts of U.S. Currency have been recovered. Affidavit at ¶ 40.

This is the fourth and final mention of activities at Kilbourne.

Paragraphs forty one to forty three state the agent's opinion that "based on my training and expertise drug dealers often use, store, and maintain narcotics and firearms in their places of residence" and that drug dealers "often, use, store and maintain narcotics and firearms . . . in other places in which they have control, and other persons have control." Affidavit at ¶ 41-42. In paragraph forty three, the agent states that there is "probable cause to believe there is evidence of a crime at both 13300 Kilbourne and 20400 Gallagher." Affidavit at ¶ 43.

III. Legal Standard

The Court of Appeals for the Sixth Circuit recently articulated the legal standard for motions to suppress based on a violation of the Fourth Amendment.

> The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "chief evil" deterred by the Fourth Amendment is the physical invasion of the home. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Thacker v. City of Columbus, 328 F.3d 244, 252 (6th Cir. 2003). Indeed, the right of a citizen to retreat into the home and "there be free from unreasonable governmental intrusion" stands at the core of the Fourth Amendment. Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (quoting Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). "One of the touchstones of the reasonableness requirement is that the police must generally obtain a warrant based upon a judicial determination of probable cause before entering the home." Ziegler v. Aukerman, 512 F.3d 777, 785 (6th Cir. 2008). The job of the magistrate judge presented with a search warrant application is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "There must, in other words, be a nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (emphasis added and internal quotation marks omitted). Our duty as a reviewing court is to ensure that the judge had a "substantial basis for concluding that probable cause existed." Id. (quoting Gates, 462 U.S. at 214, 103 S.Ct. 2317). "The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." United States v. Berry, 565 F.3d 332, 338 (6th Cir. 2009).

United States v. Brown, __ F.3d __, 2016 WL 3584723, *4 (June 27, 2016).

IV. Analysis

The issue is whether there was probable cause to search 13300 Kilbourne based on the information in the affidavit. Defendant says that the affidavit lacked a sufficient

8

nexus between the criminal activities of Livingston and Lamont Harvey and 13300 Kilbourne. As noted above, the Fourth Amendment requires a nexus between the place to be searched and the evidence sought to establish probable cause for issuance of the search warrant. United States v. Laughton, 409 F.3d 744, 747 (6th Cir. 2005). It is a "fact-intensive question resolved by the totality of the circumstances presented." Brown, 2016 WL at *6.

The government contends that there is a nexus because Lamont Harvey was seen going to and from the Kilbourne residence and the Gallagher residence and because after leaving the Kilbourne residence, Lamont Harvey met up with Livingston who later sold drugs to an undercover officer. The government also relies on the argument that because there was evidence that Lamont Harvey was dealing drugs, there was likely evidence of drug trafficking activity at places he frequently visited, including the Kilbourne residence.

The government's position is not well taken. In its forty-three paragraphs, the affidavit references 13300 Kilbourne in only four paragraphs. Affidavit at ¶ 22, 29, 31, and 40. None of the statements in paragraphs 22, 29 or 31 attest to any drug activity at the Kilbourne residence. For instance, there is no statement of high-volume of traffic coming and going during the day or night; no information or facts are set forth that agents observed what even appears to be drug transactions at the outside of the residence or even in the vicinity of the Kilbourne residence. There are no facts stated in the affidavit, even by inference, that Lamont Harvey maintains drugs or drug proceeds at the Kilbourne residence. With the exception of paragraph forty, all of the substantiated factual assertions in the affidavit support the conclusion that Lamont

Harvey resided at 20400 Gallagher.

Examining the reference to the Kilbourne residence reveals that Lamont Harvey is seen near or at the residence only two times. First, on July 8, Lamont Harvey is followed to a location near the Kilbourne residence (he does not go into the house, nor even get out of his vehicle) and is seen merely conversing with an unidentified female at the front passenger side window. Nothing is observed exchanging between them. This encounter does not provide any basis for searching the Kilbourne residence.

Second, on July 21 at 9:38 a.m., agents locate the Suburban parked on Coplin Street, near Kilbourne. The affidavit does not state that any agent saw Lamont Harvey leave 13300 Kilbourne, but only that Lamont Harvey is seen entering "the drivers seat of the above described Chevrolet suburban and leave the location." Affidavit at ¶ 32. The agents then observe Lamont Harvey go to DTE Energy, leave DTE Energy, and go to Livingston's residence on Nashville. Livingston then leaves his residence and meets up with an undercover agent for a drug transaction. Again, this paragraph contains no evidence that any illegal activity was observed at the Kilbourne residence. Rather, it simply says that Lamont Harvey was seen at the Kilbourne residence and later engaged in a drug transaction.

A third reference to 13000 Kilbourne is in paragraph twenty-nine. The tracking device for the Suburban shows that it "travels to and remains at 13300 Kilbourne on numerous occasions." Affidavit at ¶ 29. There is no identification as to who drove the Suburban to this address. Even assuming it was Lamont Harvey, there is no statement that any illegal activity was observed at any of the "numerous occasions" that the Suburban was at 13300 Kilbourne. This vague statement and adds nothing to

establishing that there is evidence of drug trafficking at the Kilbourne residence.

Paragraph forty, however, attempts to link 13300 Kilbourne to Lamont Harvey and Livingston's activities as a potential location for drug trafficking activity. First, the agent states that a law enforcement data base check of both the 13300 Kilbourne residence and 20400 Gallagher residence reveals that both residences contain persons with the last name of Harvey. The agent goes on to state that "previous enforcement activity, to include prior narcotics search warrant executions, at both of these locations, indicate the occupants being Lamont HARVEY and other members of the HARVEY family. Narcotics and firearms, along with large amounts of U.S Currency has been recovered." Affidavit at ¶ 40.

This paragraph is vague and misleading. First, there is no information as to who was the subject of the search warrants at either residence nor any detail as to what was seized other than a generic statement of "narcotics and firearms" and "large amounts of U.S. Currency." Moreover, the agent does not state when the search warrant activity took place at 13300 Kilbourne. This is significant. As it turns out, a search warrant was executed at 13300 Kilbourne **five years ago**. This is stale information. "[A] warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006). In examining staleness claims, courts "consider the defendant's course of conduct, the nature and duration of the offense, the nature of the relevant evidence, and any corroboration of the information." Jackson, 470 F.3d at 308. Under these considerations, the fact that a search warrant was previously executed at the Kilbourne residence where evidence of drug activity was found does not support the assertion that

evidence of illegal activity would again be found five years later.

The failure of the affidavit to set forth when the search warrant was executed at 13300 Kilbourne is troubling particularly because this was the only paragraph which attempts to connect Lamont Harvey's activities to 13300 Kilbourne and provide some evidence that there was drug activity taking place at the Kilbourne residence. By omitting the date of when the search warrant at the Kilbourne residence was executed, the affidavit gives the impression that the illegal activity was recent. It was not.

The government now downplays the import of paragraph forty, suggesting that it was simply one piece of evidence establishing probable cause to search 13300 Kilbourne and that the placement at the end of the affidavit indicates it was not a "substantial fact" on which the magistrate judge was to base her decision. This argument lacks merit. Paragraph forty is the only paragraph in the entire affidavit which comes close to attempting to show a nexus between the Kilbourne residence and illegal activity. As explained above, the other references to 13300 Kilbourne do not reveal any evidence of observed illegal activity.

Stripped of paragraph forty, the only known facts about 13300 Kilbourne are: (1) Lamont Harvey was once seen near the residence talking to an unidentified woman; (2) a vehicle registered to him was often seen at the residence; (3) and **on one occasion** Lamont Harvey met up with Livingston after he had been at 13300 Kilbourne. As to the latter, it is noted that Lamont Harvey did not travel directly to Livingston after leaving 13300 Kilbourne but rather made a stop at DTE. This evidence does not rise to level of establishing probable cause that any evidence of drug trafficking activity would be found at 13300 Kilbourne.

The government is then left with the argument that because Lamont Harvey was observed in engaging in drug transactions, it is reasonable to assume that he stored evidence of his activities at other residences, like 13300 Kilbourne, where he and his vehicle had been observed. Indeed, the agent says at much in paragraphs 41 and 42. This argument is also unavailing. While the Sixth Circuit has said that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Jones, 159 F.3d 969, 975 (6th Cir. 1998) (citations omitted). The Sixth Circuit has "never held . . . . that a suspect's status as a drug dealer, stating alone, gives rise to a fair probability that drugs will be found in his home.'" United States v. Brown, __ F.3d at ___, 2016 WL 3584723 at * 5 (quoting United States v. Frazier, 423 526, 533 (6th Cir. 2005). The court of appeals rather has "required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that it, we have required facts showing that the residence had been sued in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence. Id. (citations omitted).

The problem for the government is that 13300 Kilbourne is not Lamont Harvey's residence. Moreover, putting aside the stale warrant, there is no evidence that any drug trafficking activity has ever been observed at the Kilbourne residence by Lamont Harvey or anyone else. The only connection between the Kilbourne residence and Lamont Harvey is that he has been seen there and a car registered to him has been seen there. This fact is neither surprising nor suspicious. The Kilbourne residence contains individuals whose last names are also Harvey. It is reasonable to assume that Lamont Harvey was present at or near the Kilbourne residence because of a family connection,

not because of drug trafficking activity.

In the end, the inclusion of the Kilbourne residence in the affidavit and application for search warrant was improper. The attempt to tie the Kilbourne residence into Livingston and Lamont Harvey's drug trafficking activities falls flat. Accepting the government's position would mean that any residence that a suspected drug dealer happens to be seen at or around and which may be a residence of a family member, with no other current observed facts of drug trafficking activity at the residence, is fair game for obtaining a search warrant. The Constitution requires more.

After having engaged in the fact intensive inquiry made necessary by the vagueness on the affidavit, the Court finds that the warrant issued for 13300 Kilbourne was not supported by probable cause.

## V. Conclusion

For the reasons stated above, defendant's motion to suppress is GRANTED.[3]

SO ORDERED.

                                            S/Avern Cohn
                                            AVERN COHN
                                            UNITED STATES DISTRICT JUDGE

Dated: August 16, 2016
       Detroit, Michigan

---

[3] Given this determination, it is not necessary to address defendant's additional grounds for suppression.